**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| **SAINT-GOBAIN CERAMICS &** ) | |
| **PLASTICS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | Civil Action No. |
| ) | **07-40129-FDS** |
| **v.** ) | |
| ) | |
| **YUHU WANG and PLANAR SOLUTIONS,** ) | |
| **LLC,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S FED. R. CIV. P. 12(b)(1) AND**
**12(b)(6) MOTION TO DISMISS**

**SAYLOR, J.**

This is a dispute over the invention of a patent. Defendant Yuhu Wang is a former employee of plaintiff Saint-Gobain Ceramics & Plastics, Inc. Wang has applied for a patent as a co-inventor. Saint-Gobain contends that the invention claimed in the pending patent application was invented by Wang during his employment with the company. Saint-Gobain further contends that Wang and Planar Solutions (the assignee of the pending patent) have committed various state-law violations stemming from Wang's alleged breach of a non-compete agreement.

Saint-Gobain brings claims for (1) injunctive relief against both defendants on the question of patent inventorship, (2) breach of contract against Wang, (3) tortious interference and unjust enrichment against Planar Solutions, (4) trade secret misappropriation against Wang, (5) trade secret misappropriation and unjust enrichment by Planar Solutions, and (6) unfair competition against Planar Solutions.

Defendants have moved to dismiss the complaint and for attorneys' fees and costs.  For the reasons stated below, the motion to dismiss will be granted and the motion for sanctions will be denied.

## I.    Factual Background

The following allegations are taken as true for purposes of the present motion.

In late 2000, Yuhu Wang was hired by Saint-Gobain Ceramics & Plastics, Inc., as a research chemist.  On September 28, 2000, Wang executed a "Noncompete Employee Agreement" with Saint-Gobain.  This agreement required Wang to protect confidential and trade secret information of Saint-Gobain from disclosure; to refrain from competing with Saint-Gobain for a one-year period following the termination of his employment; and to disclose to Saint-Gobain all work product made or conceived by him during his employment.  Under the agreement's terms, any such work product was to be the sole and exclusive property of Saint-Gobain.

Wang's area of expertise was in chemical mechanical polishing ("CMP").  During the course of his employment, Wang conceived, reduced to practice, and developed processes for obtaining colloidal silica from fumed silica.  These processes were disclosed to others in the company in the spring of 2002.

In January 2004, Wang resigned from Saint-Gobain.  At some unspecified point shortly thereafter, Wang was hired by non-party Wacker Chemical Corp. to work as a "Senior Research Chemist" for Planar Solutions.  Saint-Gobain notified Planar Solutions of Wang's non-compete agreement and of the "secret nature" of his previous CMP work.  A Planar Solutions representative assured Saint-Gobain that neither it nor Wang would be doing any work in

violation of the non-compete agreement.

On December 21, 2006, Wang and non-party Deepak Mahulikar filed U.S. Patent Application Publication No. 2006/0283095A1, corresponding to U.S. Patent Application Serial No. 11/152,873.  The application was entitled "Fumed Silica to Colloidal Silica Conversion Process" and listed Planar Solutions as the patent assignee.  Saint-Gobain contends that the processes claimed as inventions in that application were conceived solely and exclusively by Wang in the spring of 2002, when he was still employed by Saint-Gobain.

## II.    Analysis

### A.    Standard of Review

In reviewing a facial challenge to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the district court must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs." *Viquiera v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998).  However, subject-matter jurisdiction is never presumed, and plaintiff has the burden of proving its existence.  *Id.* (*citing Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996)).

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the factual allegations in a complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, - - - U.S. - - - , 127 S. Ct. 1955, 1966-67, 167 L. Ed.2d 929 (2007)). Dismissal for failure to state a claim is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi*, 513 F.3d at 305 *3 (*quoting Centro*

3

*Medico del Turabo, Inc.*, *v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

  **B.**  <u>Inventorship Claim—U.S. Patent Inventorship</u>

   Defendants first contend that the complaint should be dismissed for lack of subject-matter jurisdiction. Federal jurisdiction over patent-related disputes is established by 28 U.S.C. § 1338(a), which states in relevant part:

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection or trademark cases.

*Id.* The Supreme Court has established a two-part test for determining jurisdiction under the statute: "[Section] 1338(a) jurisdiction . . . extends only to those cases in which a well-pleaded complaint establishes either (1) that federal patent law creates the cause of action, or (2) that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Industries Op. Corp.*, 486 U.S. 800, 808-09 (1988). In applying that two-part test, courts have focused on three distinct requirements within the language of *Christianson* to limit the reach of § 1338(a) jurisdiction: the "well pleaded" complaint rule, the "substantial element" requirement, and the "necessary element" requirement. *See, e.g., Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1325-31 (Fed. Cir. 1998), *overruled on other grounds*, *Midwest Industries, Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358-59 (Fed. Cir. 1999); *Heineken Tech. Serv., B.V. v. Darby*, 103 F. Supp. 2d 476, 478 (D. Mass. 2000). Ultimately, *Christianson* "sets a lenient standard for jurisdiction under 28 U.S.C. § 1338(a)." *U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000).

Plaintiff contends that defendant Wang is the sole inventor of the processes claimed in the pending patent application.[1]  To that end, it requests that this Court correct the designation of inventorship on the application.  Defendants do not specifically argue that plaintiff's claims are deficient under the requirements of *Christianson*.  Rather, they contend that when a patent application is *pending*, any inventorship dispute lies within the exclusive jurisdiction of the U.S. Patent and Trademark Office ("PTO").

The law generally requires that all joint inventors be listed on a patent application.  *See* 35 U.S.C. § 116.  Two federal statutes govern disputes as to patent inventorship.  The first, 35 U.S.C. § 256, provides:

> Whenever through error a person is named in an *issued* patent as the inventor, or through error is not named in an issued patent and such error arose without any deceptive intention on his part, [the PTO shall correct the error].  . . . The court before which such matter is called into question may order correction of the patent on notice and hearing of all parties concerned and [the PTO] shall issue a certificate accordingly.

*Id.* (emphasis added).  This statute explicitly contemplates a role for the federal courts in hearing inventorship disputes concerning issued patents.

In contrast, 35 U.S.C. § 116 provides as follows:

> Whenever through error a person in named in an *application* for patent as the inventor, or through error an inventor is not named in an application, and such error arose without any deceptive intention on his part, the [PTO] may permit the application to be amended accordingly, under such terms as he prescribes.

*Id.* (emphasis added).  Notably, the latter statute does not mention the availability of judicial relief.

The Federal Circuit has stated, albeit in dicta, that there is no private right of action under § 116.  In *Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1356 & n.1 (Fed. Cir. 2004), the

---

[1]  Plaintiff's claim for injunctive relief is entitled "Declaration of Inventorship," without reference to the statutory basis for the claim.

plaintiff attempted to base a claim for inventorship of a pending patent on § 116; by the time the case went to trial, however, the patent had been granted.  376 F.3d at 1357 n.1.  To allow the claim to proceed, the district court constructively amended Lilly's complaint to base the claim on § 256.  *Id.*  In reviewing the district court's decision, the Federal Circuit noted:  "The text of § 116 only grants the Director of the Patent and Trademark Office the authority to take certain actions and plainly does not create a *cause of action* in the district courts to modify inventorship on pending patent applications."  *Id.* (emphasis added).

Courts have issued conflicting opinions as to the viability of claims to enforce inventorship rights in pending patent claims.  The Sixth Circuit, comparing the language of § 116 and § 256 and without reference to *Eli Lilly*, has concluded that district courts lack subject matter jurisdiction in such situations.  *E.I. DuPont de Nemours & Co. v. Okuley*, 344 F.3d 578, 583-84 (6th Cir. 2003); *see also Display Research Lab., Inc. v. Telegen Corp.*, 133 F. Supp. 2d 1170, 1173-1174 (N.D. Cal. 2001) (same).  Some district courts have found that subject matter jurisdiction theoretically exists under § 1338(a) but, citing *Eli Lilly*, nevertheless have concluded that § 116 does not create a private right of action.  *See Simonton Bldg. Products, Inc. v. Johnson*, - - - F. Supp. 2d. - - - -, 2008 WL 901797 *1, *6-7 (N.D. W.Va. 2008); *Sagoma Plastics, Inc. v. Gelardi*, 366 F. Supp. 2d 185, 189 (D. Me. 2005); *Stevens v. Broad Reach Companies, L.L.C.*, 2006 WL 1556313 *1, *3-7 (W.D. Mo. 2006); *see also Duke Univ. v. Elan Corp.*, 2006 WL 267185 *1, *4 (M.D.N.C. 2006); *Concrete Washout Sys., Inc. v. Minegar Env. Sys., Inc.*, 2005 WL 1683930 *1, *3 (E.D. Cal. 2005).  Other courts have not discussed the private right of action issue explicitly, but have allowed such claims to go forward after a straightforward *Christianson* analysis.  *Kosower v. Gutowitz*, 2001 WL 1488440 *1, *6

(S.D.N.Y. 2001); *Heineken*, 103 F. Supp. 2d at 478-480 (pre-dating *Eli Lilly*); *Post Performance, LLC v. Renaissance Imports, Inc.*, 333 F. Supp. 2d 834, 839-840 (E.D. Mo. 2004) (citing *Heineken* and pre-dating *Eli Lilly*); *see also generally Univ. of West Virginia Bd. of Trustees v. Vanvoorhies*, 278 F.3d 1288 (Fed. Cir. 2002) (affirming district court determination of various patent-related issues that involved pending patent applications).

The Court finds the view expressed in *Simonton* and *Sagoma Plastics* persuasive—that is, while the Court has subject-matter jurisdiction under § 1338(a) to hear a pending patent inventorship claim, § 116 does not provide a private right of action for such a claim. The standard for subject-matter jurisdiction under *Christianson* is whether "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson*, 486 U.S. at 808-809. This test is "lenient," *U.S. Valves*, 212 F.3d at 1372, and the Court agrees with the authorities that have held a pending patent inventorship claim meets its requirements. *See, e.g., Simonton*, 2008 WL 901797 at *6; *Concrete Washout Sys.*, 2005 WL 1683930 at *4; *Sagoma Plastics*, 366 F. Supp. 2d at 189; *Heineken*, 103 F. Supp. 2d at 478-80; *Duke Univ.*, 2006 WL 267185 at *4; *but see DuPont*, 344 F.3d at 583-84.

The mere fact, however, that this Court could exercise subject matter jurisdiction over a pending patent inventorship claim—assuming such a cause of action existed and was well-pleaded—does not save the complaint from dismissal for failure to state a claim. As the *Sagoma Plastics* court stated:

> Given the structural parallels between the two provisions, it can be inferred that Congress'
> clear delegation of power to the courts in § 256 to correct issued patents and its failure to
> make any such express delegation in § 116 indicates a conscious choice to bar the courts

7

from correcting errors regarding inventorship until after the patent has issued.

Interpreting § 116 as precluding a private right of action ensures a more rational and coherent process for processing patent application . . . the PTO may still correct inventorship errors during the application process with the consent of all inventors, or it may reject the application outright if consent cannot be obtained.  However, the courts may not interfere with the patent process until after the PTO has rendered a final decision on the precise nature of the patent, if it chooses to issue a patent at all.  Such a scheme ensures that potentially long and costly litigation over the question of inventorship with not be mooted by subsequent actions of the PTO.  If a private right of action were implied in § 116, a court might grant relief to a plaintiff inventor only to have the PTO determine that the particular claims in the application over which plaintiff claimed inventorship are not patentable.  Or the PTO might deny the patent application in its entirety.  It seems unlikely that Congress intended to authorize a scheme in which such a waste of scarce judicial resources was possible.

366 F. Supp. 2d at 188.  If the PTO approves the disputed patent application, the plaintiff could,

of course, bring an inventorship claim in the federal courts under the plain language of § 256.  But

plaintiff lacks a private right of action to bring a *pending* patent inventorship claim in this Court,

and that claim is accordingly subject to dismissal.[2]

The courts that have considered these issues have not generally addressed the significance

of the "deceptive intention" clauses of §§ 116 and 256, notwithstanding the fact that many

inventorship claims seem, at least implicitly, to allege deceptive intent.  *See*, *e.g. Sagoma Plastics*,

366 F. Supp. 2d at 186 (plaintiff, brother of the patenting defendant, brought claim to have the

patent application reflect co-inventorship).  The Federal Circuit has ruled that  § 256 permits an

action for misjoinder (i.e., where a patent is issued to a person who is not an inventor) without

regard to any deceptive intention by the inventor.  *Stark v. Advanced Magnetics, Inc.*, 119 F.3d

---

[2]  As noted, plaintiff has not specified the statutory basis for its inventorship claim.  The statutes establishing federal question jurisdiction and patent law jurisdiction (28 U.S.C. § 1331 and § 1338(a), respectively) do not create independent causes of action.  *See, e.g.*, *Sagoma Plastics*, 366 F. Supp. 2d at 189 (quoting *Mead Corp. v. United States*, 490 F. Supp. 405, 407 (D.D.C. 1980), *aff'd*, 652 F.2d 1050 (D.C. Cir. 1981)).

1551, 1554 (Fed. Cir. 1997).  By contrast, claims under § 256 for nonjoinder (i.e., where a patent

fails to list a person who is an inventor) and claims under § 116 require that the inventor *lack*

deceptive intention.  *Id.* at 1554-55.[3]

Under *Stark*, therefore, the presence of deceptive intention forecloses any relief under §

116, even from the PTO.  If plaintiff here is alleging that Wang or Mahulikar acted with deceptive

intention, then a claim under § 116 could not be brought in this Court even if the statute

otherwise provided a right of action.  Such an allegation would not, however, foreclose a later

claim for misjoinder under § 256.  *Stark*, 119 F.3d at 1554.

## C.      Inventorship Claim—Foreign Patent

Plaintiff contends that even if this Court cannot hear its claim as to the pending patent

application in the United States, the claim is nonetheless viable given defendants' pending *foreign*

patent application.  Plaintiff has submitted evidence showing that defendants have used the

pending United States patent application as a vehicle to attempt to obtain foreign patent rights

through the Patent Cooperation Treaty ("PCT").  *See* 35 U.S.C. §§ 351-376.

It is true that the Federal Circuit has authorized federal district courts to order patent

owners to correct the inventorship of pending PCT applications.  *See Chou v. University of*

*Chicago*, 254 F.3d 1347, 1360 (Fed. Cir. 2001).  The *Chou* plaintiff, however, brought both a

claim to correct PCT inventorship and a claim to correct U.S. patent inventorship under §

256—that is, to correct inventorship of U.S. patents *already issued*.  *Id.*  The court stated: "the

_____

[3]  To the extent that this gives greater protection to those who act with deceptive intention, as opposed to those who have made honest mistakes, it is, of course, highly anomalous.  It should be noted, however, that inequitable or deceptive conduct in submitting a patent application will likely invalidate a later-issued patent. *See, e.g., Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1227 (Fed. Cir. 1994); *Glaverbel S. A. v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1556-57 (Fed. Cir. 1995).

district court, *if it concludes on remand that [the plaintiff] is properly an inventor of the disputed subject matter*, can instruct the [defendant] to take appropriate action to change the inventorship designation on the foreign patent applications." *Id.* (emphasis added).

This language clearly limits a district court's ability to correct pending PCT inventorship claims to situations where a court has already determined the inventorship of an issued United States patent. Inventorship on PCT applications "normally follows the inventorship designation in the originating country." *Id.* Because the inventorship designation on the United States patent at issue in this case has not yet been settled (and cannot be settled by this Court while the United States application is pending) the Court has no basis upon which to correct the pending PCT application.[4]

**D.     State Law Claims**

Plaintiff also brings claims for (1) breach of contract against Wang, (2) tortious interference and unjust Enrichment against Planar Solutions, (3) trade secret misappropriation against Wang, (4) trade secret misappropriate and unjust enrichment against Planar Solutions, and (5) unfair competition against Planar Solutions.

These claims allege violations of Massachusetts law. As a general principle, when a plaintiff's only federal claim is dismissed at the early stages of a suit, the court should consider whether to exercise its supplemental jurisdiction over any state law claims. *See, e.g.*, *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). The dismissal of the federal claim does not "divest the district court

---

[4]  The Court also notes that plaintiff has not pleaded a request for injunctive relief as to defendants' PCT patent application.

of power to exercise supplemental jurisdiction but, rather, sets the stage for an exercise of the court's informed discretion." *Soto v. Bzdel*, 214 F. Supp. 2d 69, 77 (D. Mass. 2002) (quoting *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256-257 (1st Cir. 1996)); *see also* 28 U.S.C. § 1367(c)(3) (allowing court to "decline to exercise supplemental jurisdiction over [pendent state] claims[s] . . . [if the] court has dismissed all claims over which it has original jurisdiction"). The decision whether to exercise jurisdiction lies within the broad discretion of the court. *Vera-Lozano v. Int'l Broadcasting*, 50 F.3d 67, 70 (1st Cir. 1995).

This case is at a very early stage; among other things, discovery has not yet commenced. The Court concludes that concerns of "comity, judicial economy, convenience, fairness and the like" disfavor the exercise of supplemental jurisdiction here. *Roche*, 81 F.3d at 257; *see also Gibbs*, 383 U.S. at 726 ("[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law"). The Court therefore declines to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c).[5]

## D.   Motion for Attorneys' Fees and Costs

---

[5]   It is not clear if plaintiff contends that some or all of its five state law claims "necessarily depend[] on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims," and thus have an independent basis for § 1338(a) jurisdiction. *Christianson*, 486 U.S. at 808-809.

In any event, none of these claims "necessarily depend" on resolution of a substantial question of patent law. *Christianson*, 486 U.S. at 808-809. All of the claims involve or implicate allegedly improper use of confidential and/or trade secret information. Such information, of course, does not have to be patented or even patentable to merit legal protection. To the extent that Counts 2 and 6 allege that Planar Solutions accepted the assignation of the proposed patent, the claimed impropriety of acceptance seems to turn on Planar Solutions' alleged knowledge that confidential and/or trade secret information (disseminated in breach of a non-compete agreement) was used to produce the application. Again, these claims would be viable even if the PTO ultimately rejected the patent application.

Defendants request this Court award them attorneys' fees and costs in the preparation incurred in bringing this motion and defending an "improper" lawsuit. Fed. R. Civ. P. 11 authorizes the Court to sanction parties or attorneys who file pleadings, motions or other papers "for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase in the cost of litigation." *Simon v. Navon*, 71 F.3d 9, 17 (1st Cir. 1995). This determination is left to the Court's "considered judgment." *Id.*

Plaintiff's complaint, although dismissed, is not in any way remarkable or outrageous within the means of Rule 11. The Court declines to impose sanctions. In any event, Rule 11 requires that defendants' motion "shall be made separately from other motions." Fed. R. Civ. P. 11(c)(1)(a). When a motion for sanctions is included in a motion to dismiss, the Court is compelled to deny the motion for noncompliance with Rule 11. *See, e.g., Raffaele v. Marrama*, 164 F. Supp. 2d 224, 228 (D. Mass. 2001).

**IV.    Conclusion**

For the foregoing reasons, defendants' motion to dismiss as to Count 1 is GRANTED under Fed. R. Civ. P. 12(b)(6). The Court declines to exercise supplemental jurisdiction over Counts 2, 3, 4, 5, and 6, and those claims are accordingly dismissed without prejudice to their renewal in a state court of appropriate jurisdiction. Defendants' motion for attorneys' fees and costs is DENIED.

**So Ordered.**

                                          /s/  F. Dennis Saylor
                                          F. Dennis Saylor IV
                                          United States District Judge

Dated:  June 27, 2008

12